**In re GAINEY CORPORATION, et al., Debtors.**

No. GG 08–09092.

United States Bankruptcy Court, W.D. Michigan.

Dec. 10, 2008.

Daniel F. Gosch, Geoffrey A. Fields, John T. Schuring, Dickinson Wright PLLC, Stephen B. Grow, Warner Norcross & Judd, LLP, Grand Rapids, MI, Trent B. Collier, Dickinson Wright PLLC, Ann Arbor, MI, for Gainey Corporation.

Jay L. Welford, Judith Greenstone Miller, Louis P. Rochkind, Paul R. Hage, Richard E. Kruger, Jaffe, Raitt, Heuer & Weiss, Southfield, MI, for Official Committee of Unsecured Creditors.

*CORRECTED\* MEMORANDUM OPIN-*
*ION AND ORDER APPOINTING*
*AN EXPERT WITNESS UNDER*
*FEDERAL RULE OF EVIDENCE*
*706*

JAMES D. GREGG, Chief Judge.

Gainey Corporation, and other related corporate entities ("Debtors"),[1] filed their Chapter 11 bankruptcy petitions on October 14, 2008. Wachovia Bank National Association, as agent for various lenders (the "Banks"), objected to the Debtors' use of cash collateral. An initial emergency hearing regarding use of cash collateral took place on October 15, 2008. At the conclusion of the hearing, and for reasons set forth on the record, over the Banks' objection, the court issued a limited order which permitted the Debtors to use cash collateral upon certain terms and conditions. The court also ordered that the Banks receive specified adequate protection to protect against diminution of the collateral.

An Interim Order Authorizing Use of Cash Collateral, Granting Adequate Protection, and Providing Other Related Relief was docketed on October 16, 2008. (Dkt.36.) On October 30, 2008, after another contested hearing, a Supplemental Proposed Order Regarding Adequate Protection and Emergency Motion for Use of Cash Collateral was entered. (Dkt.81.) Also, a Stipulated Proposed Order Regarding Adequate Protection and Emergency Motion for Use of Cash Collateral was entered on October 31, 2008. (Dkt.84.)

A final hearing regarding the Debtors' request to use cash collateral has been scheduled on January 6, 2009. The court has been advised by the parties and believes that the final hearing shall be heavily contested. The indebtedness owed to the Banks is approximately $230,000,000 and, given the limited evidence presented at the preliminary hearings, the Banks are in an undersecured position.

During the preliminary hearings, the evidence presented by the Debtors and the Banks was incomplete. The court candidly admits that it was difficult to make findings of fact and conclusions of law based upon the record at the preliminary hearings. Further, some "surprise" facts and issues arose, including whether some of the Debtors' expense items were necessary and reasonable and what may have happened to approximately 200 units of "missing" collateral and the proceeds therefrom.

After reflecting upon the evidence from the preliminary hearings, and based upon a review of the court's file, the court has determined that much more information is required at the final hearing to assist and guide the court in its decision-making process.

On November 10, 2008, an Order to Show Cause Why Expert Witness Should Not Be Appointed Under Federal Rule of Evidence 706 ("OSC") was issued by the undersigned judge. The OSC was promptly filed, docketed and served upon parties-in-interest.

---

\* This Corrected Opinion and Order has not modified any substantive discussions or results in the original opinion and order dated November 20, 2008. Only typographical errors, citations, and language have been corrected.

1. The Debtors are Gainey Corporation (Case No. 08–09092), Gainey Transportation Ser-

vices, Inc. (Case No. 08–09094), Super Service, Inc. (Case No. 08–09096), Freight Brokers of America, Inc. (Case No. 08–09109), Lester Coggins Trucking, Inc. (Case No. 08–09095), and Gainey Insurance Services, Inc. (Case No. 08–09097).

A hearing on the OSC took place on November 14, 2008, in the bankruptcy courtroom in Grand Rapids, Michigan. Appearing and participating at the hearing were: Geoffrey A. Fields, Esq., one of the attorneys for the Debtors; Robert E.L. Wright, Esq., one of the attorneys for the Banks; Judith Greenstone Miller, Esq., one of the proposed attorneys for the Creditors' Committee (the "Committee"); and Dean Reitberg, Esq., Office of the United States Trustee ("UST").

> The court may on its own motion ... enter an order to show cause why expert witnesses should not be appointed.... The court may appoint any expert witnesses agreed upon by the parties, and may appoint expert witnesses of its own selection.

FED.R.EVID. (herein "FRE") 706(a). Also, if the court appoints an expert witness, compensation shall be based upon FRE 706(b).

At the OSC hearing, and in accordance with FRE 706, the court heard the parties' respective suggestions and various arguments concerning the possible appointment of an expert to examine the Debtors' business operations, financial reporting, management structure, cash flow projections, the possibility of reducing expenses and maximizing income, and the continued use, or possible termination of use, of the Banks' cash collateral. Factual evidence and expert opinion testimony will be required very soon, i.e., at the final hearing scheduled for January 6, 2009.

> Some things are worth doing quickly, even if you might have done a better job if you had taken more time. Others must be done well, even if that means delay.

Floyd Norris, *Proceed With Care, Mr. Obama*, N.Y. Times, November 7, 2008, at B1 (discussing the so-called financial bailout and other grave economic difficulties facing our nation). In this bankruptcy case, the decision to be made by this court concerning contested use of cash collateral falls within the first category and requires expeditious action. A court should appoint an expert early in the litigation before it is too late.[2]

During the OSC hearing, the UST stated that appointing an expert witness was "unorthodox." The Banks' attorney interjected that an appointment might be "mavericky." After a pause, and nearly at a loss for words, the undersigned judge responded "You betcha."[3]

At the conclusion of the OSC hearing, the court stated it would likely appoint an expert provided that a highly competent, qualified, neutral and unbiased witness (who is a member of a restructuring firm) is willing to serve and benefit *all* parties-in-interest in this chapter 11 case. Further, the court commented that any expert should be located in Detroit, Chicago or

---

**2.** The court may begin the appointment process on its own initiative by entering an order to show cause. FRE 706(a); Joe S. Cecil & Thomas E. Willging, *Court–Appointed Experts*, FJC [Federal Judicial Center] Reference Manual on Scientific Evidence (1st ed.1994) at 566 (herein "FJC Study").

**3.** Appointment of a court-appointed expert is not as rare as the parties may have perceived. Per the Federal Judicial Center study, based upon a questionnaire, 20% of federal court district judges have appointed an expert under FRE 706 on at least one occasion. FJC Study at 535. The standard of appellate review of whether appointment of an expert witness under FRE 706 was warranted is an abuse of discretion. FJC Study at 532 (citing *Gates v. United States*, 707 F.2d 1141, 1144 (10th Cir.1983) (on review, an appellate court should focus upon whether the expert selected by the court exhibited bias)). Based upon interviews, "the initial suggestion to appoint an expert almost always comes from the judge, not the parties." FJC Study at 544.

Grand Rapids, to reduce the expert's compensation and actual expenses.

In accordance with FRE 706(a), the court requested that the parties attending the hearing suggest persons ("nominations") of qualified possible experts. The Banks nominated one restructuring firm. The Committee nominated two restructuring firms. The Debtors and the UST declined to make any nomination.

The court determined that it would contact one of the restructuring firms suggested by the Committee. In the event that the firm was unable or unwilling to serve as an expert, only then would the court contact the other restructuring firm that was suggested by the Committee and the Banks.

■ The court has now contacted Patrick M. O'Keefe, the Managing Director of O'Keefe & Associates, Bloomfield Hills, Michigan (the "Expert Witness"). The Expert Witness also has an office in Grand Rapids, Michigan.[4]

■ The Expert Witness has consented to serve in the contested cash collateral matter. FRE 706(a). The Expert Witness has provided information to the court stating those individuals in his firm who might be involved in reviewing the Debtors' and the Banks' records and the hourly rates of the individuals who might provide services. They are:

| | |
|---|---|
| Patrick M. O'Keefe, Managing Member | $425 per hour |
| David Distel, Managing Director (Grand Rapids office) | $350 per hour |
| Susan Koss, Director | $275 per hour |
| John Dimovski, Senior Associate | $265 per hour |
| Steve Weber, Senior Associate | $240 per hour |
| Rob Taylor, Associate | $220 per hour |
| Barb Geisman, Staff | $220 per hour |
| Tom Braun, Staff | $220 per hour |
| Various Paraprofessionals, Staff | $ 90 per hour |

Mr. O'Keefe shall provide the Expert Witness' findings and opinions at the continued contested hearing and testify regarding use of cash collateral. In the event that unexpected or unforeseen circumstances result in Mr. O'Keefe becoming unavailable to testify, Mr. Distel shall testify. (This was suggested by the Committee in its nomination.) The other identified members of the restructuring firm will review records and recorded data, obtain information, and develop the factual underpinnings and assumptions (to the extent necessary or advisable) to support the Expert Witness' opinions or inferences at the hearing. FRE 703 and 704.

■ The court has inquired about whether any actual conflict of interest exists or whether any appearance of a conflict may exist. The court has informally and orally discussed this with Mr. O'Keefe. The court has been advised that prior to the Debtors' bankruptcy filing, Mr. Distel had preliminary discussions (on two separate occasions) with the Debtors regarding the possible retention of O'Keefe & Associates as the Debtors' financial advisor. On each occasion, the Debtors declined to retain O'Keefe & Associates. The court finds that these discussions do not warrant any disqualification of the Expert Witness from testifying in connection with the contested cash collateral hearing.

As was raised by the Banks, and briefly addressed by the court during the OSC hearing, the Expert Witness shall not seek to be appointed as a professional until such time that its duties as an expert witness are completed. After completion, the Expert Witness will not be appointed as a professional for either the Debtors or the Banks. However, should, after completion of his duties, the Committee seek to appoint the Expert Witness as a professional financial advisor, the Expert Witness shall not be prohibited from serving the estate

---

**4.** It is not improper for a judge to use existing professional contacts to identify an expert provided the expert will be unbiased. FJC Study at 545.

by representing the Committee. Such possible future representation may assist the estate and the court to "secure fairness in administration, elimination of unjustifiable expense and delay ... to the end that the truth may be ascertained and proceedings justly determined." FRE 102.[5] Also, such future appointment may possibly "secure the just, speedy, and inexpensive determination of every case and proceeding." FED. R. BANKR.P. 1001.

■ The Expert Witness shall be entitled to compensation and reimbursement of expenses in accordance with FRE 706(b). Based upon findings of fact and conclusions of law at the preliminary contested cash collateral hearing, and based upon information at the OSC hearing that the Debtors thus far have operated better than their budget projections, the court finds that the Debtors now have sufficient cash reserves to pay a retainer to the Expert Witness' restructuring firm. The court recognizes that the available funds may constitute the Banks' cash collateral because of the replacement lien that was granted to the Banks in the court's prior orders. (Dkt. 81 and 84.) However, given the prior adequate protection ordered by this court, the court finds that the Debtors paying a retainer to the Expert Witness' restructuring firm, whether the funds are cash collateral or not, is proper and necessary.

■ After examining its docket and pleadings, reviewing prior findings of fact and conclusions of law, considering arguments and issues raised by the parties thus far, and realizing the nature and com-plexities of the financial records to be reviewed and the requisite opinion testimony to be given, the court finds the Debtors should forthwith pay the Expert Witness' restructuring firm $100,000 as a retainer.[6]

The Expert Witness may draw on the retainer subject to submitting an itemized statement to the court, with copies submitted to the attorneys for the Debtors, the Banks, the Committee and the UST. After review of the itemized statement disclosing services rendered and actual expenses incurred, the court may issue an order permitting the Expert Witness' restructuring firm to apply the retained funds to pay its compensation and actual expenses. To the extent necessary, upon request by the Expert Witness, and with advance notice to the other parties, the Expert Witness may request the court to order payment of a supplemental retainer or to request payment for services rendered or actual expenses in excess of the retainer amount.

The court reiterates that payment of compensation and expenses to the Expert Witness is pursuant to FRE 706. Compensation under these circumstances is *not* governed by any provision of the Bankruptcy Code including, but not limited to, 11 U.S.C. §§ 327, 328, 330 or 331.

The court recognizes that the Expert Witness may require the services of an attorney to conduct direct examination and redirect examination at the contested final cash collateral hearing. To reduce expenses, the Expert Witness may request the Committee's attorney to prepare for and conduct the examination. If the Committee's attorney declines to do so, wheth-

---

5. The policy goal of [FRE] 706 is to promote accurate factfinding. 29 Wright & Gold, *Federal Practice & Procedure*, § 6302 (2002 pocket part) (herein "Wright & Gold").

6. It is proper for a judge appointing an expert to address and establish terms of payment of the expert's fees and expenses. FJC Study at 547. The court may order an advance payment to an expert. *Id.* at 559. FRE 706 permits the court to order one party to advance fees and expenses. *Id.* at 549.

er because of a perceived conflict or any other reason, or if the Expert Witness believes that an independent attorney shall be beneficial to the preparation and presentation of evidence, the Expert Witness may request that the court permit the retention of an attorney *solely* to prepare for and participate at the final cash collateral hearing. Such a written request, which may be made by sending this court a letter, shall also be served upon the attorneys for the Debtors, the Banks, the Committee, and the UST. If retention of a trial attorney for the Expert Witness is warranted, and approved by the court, payment of that attorney shall be made directly by the Expert Witness and constitute an actual expense governed by FRE 706(b) and not governed by any provision of the Bankruptcy Code.

In conclusion, the court is also hopeful that the Expert Witness will give the Debtors and the Banks "reason to moderate their views and move toward settlement." Wright & Gold at § 6302.

NOW THEREFORE, IT IS HEREBY ORDERED AS FOLLOWS:

1. Patrick O'Keefe of O'Keefe & Associates, Bloomfield Hills and Grand Rapids, Michigan, is appointed as the Expert Witness pertaining to the Debtors' request to use cash collateral and the Banks' objection thereto.

2. At the final hearing, currently scheduled for January 6, 2009, Patrick O'Keefe or (if he is not available because of unexpected or unforeseen circumstances) David Distel (the alternate Expert Witness) shall give testimony regarding the underlying facts, necessary assumptions, and expert opinions, relating to the Debtors' request, and the Banks' objection, to the continued use of cash collateral.

3. O'Keefe & Associates may obtain information and recorded data from the Debtors and the Banks, and third parties to the extent it may be necessary, to permit the Expert Witness to competently and knowledgeably testify and give opinions.

4. The restructuring professionals utilized by the Debtors and the Banks (currently AlixPartners and Capstone respectively), shall cooperate with the Expert Witness by supplying information and financial projections as may be reasonably requested by the Expert Witness and his restructuring firm.

5. While retained pursuant to this order, the Expert Witness and his restructuring firm shall be totally independent and not represent any party-in-interest in this case. The goal of the Expert Witness shall be to assist the court to ascertain the truth, make valid financial assumptions, projections, and conclusions, and promote a fair, neutral and unbiased hearing for all parties-in-interest, including the Debtors, the Banks, the Committee, and the UST.

6. O'Keefe & Associates shall be forthwith paid a retainer of $100,000 by the Debtors which may, or may not, be cash collateral. Compensation for services rendered and reimbursement for actual expenses shall occur by future order of the court under FRE 706(b). If necessary, the Expert Witness may request a supplemental retainer or request payment in excess of the amount of the original retainer.

7. If any party desires to examine the Expert Witness in advance of the final hearing on the use of cash collateral, a deposition may take place shortly before the court hearing, upon agreement with the Expert Witness. Only one deposition shall be permitted. "Shortly before" is defined to be during the week of December 29, 2008 (excluding New Year's Eve and New Year's Day) unless the parties and the Expert Witness agree to another date. This court desires that the Expert

Witness and his restructuring firm be given the maximum opportunity to develop the information and testimony to be given at the contested hearing. No other discovery relating to the Expert Witness shall be permitted unless the court orders to the contrary, after notice and hearing.

8. If the Expert Witness finds it necessary to retain a trial attorney, the attorney will be hired only for preparation for the hearing and presentation of evidence at the hearing. If a deposition of the Expert Witness takes place, the trial attorney may also represent the Expert Witness in preparing for and testifying at his deposition. The Expert Witness shall not retain an attorney to represent him unless the court permits retention, after notice and hearing, and pursuant to reduced notice if required.

9. The Expert Witness and his restructuring firm may review financial information and recorded data, conduct interviews, make recommendations regarding increasing the Debtors' income or reducing the Debtors' expenses, and obtain any other possibly relevant information which may be helpful to the court's ultimate determination regarding whether the Debtors may continue to use cash collateral and, if so, the terms and conditions of such use. The Expert Witness and his restructuring firm may review and consider those matters identified in the court's prior OSC dated November 10, 2008, and any and all financial matters, or management matters, that may be deemed important by the Expert Witness relating to cash collateral use. If the Debtors or the Banks (or their respective financial advisors) object to the Expert Witness' and his restructuring firm's effort to obtain information, the court may conduct an immediate telephone status conference, or hearing, to resolve any disputes or differences—the court notes that time is likely of the essence.

10. The court may modify or supplement this order in the interest of justice upon notice and opportunity to be heard as the court deems appropriate.

IT IS FURTHER ORDERED that a copy of this order be served upon the attorneys for the Debtors, the attorneys for the Banks, the attorneys for the Creditors' Committee, and the Office of the United States Trustee, all by electronic means. Service shall also be made upon all other creditors and parties-in-interest listed on the bankruptcy court's mailing matrix by the Clerk of the Court utilizing the Bankruptcy Noticing Center. The Expert Witness and his restructuring firm shall be served by facsimile means and United States mail.